IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SCOTT GILLUM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. SA-19-CV-1378-XR |
| | § | |
| HIGH STANDARD, LLC et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTION TO REMAND AND MOTION TO DISMISS

On this date, the Court considered Plaintiff Scott Gillum's motion to remand (docket no. 11) and Defendant Danco Transport Inc.'s response (docket no. 12). The Court further considered Defendant Danco Transport's motion to dismiss (docket no. 5, as supplemented by no. 13) and Plaintiff's response (docket no. 8). After careful consideration, Plaintiff's motion to remand (docket no. 11) is DENIED and Defendant Danco Transport's motion to dismiss (docket no. 5) is GRANTED.

## BACKGROUND

This case arises out of a motor vehicle accident in which Plaintiff Scott Gillum ("Plaintiff") was allegedly struck by a tractor trailer driven by Micah Underwood. Plaintiff asserts essentially three tiers of claims. First, he asserts negligence, gross negligence, and negligence per se claims against the driver. Second, he asserts negligent entrustment and hiring/training claims against two motor carriers, High Standard and Double Down Trucking (and their individual owners), one or both of whom hired, trained, and entrusted the driver. Finally—and at issue here—Plaintiff asserts negligence claims against the freight broker, Defendant Danco Transport, under both a *respondeat*

*superior* theory[1] and for negligent "hiring, retention, entrustment, and/or agency" under the theory that Defendant Danco was negligent in the selection of motor carriers who were thereafter negligent in their selection and training of the driver.

Plaintiff filed his Original Petition in the District Court for the 207th Judicial District of Comal County, Texas on October 30, 2018. Docket no. 7 at 4. Originally, Plaintiff named only High Standard and Micah Underwood as defendants. *Id.* His First Amended Original Petition added Double Down Trucking. *Id.* at 318. It was not until Plaintiff's Second Amended Petition that he named Danco Transport as a defendant. Docket no. 7 at 396. Defendant Danco then removed this action to this Court on November 25, 2019 (docket no. 1), asserting federal question jurisdiction based on complete preemption under the Federal Aviation Administration Authorization Act, and a week later filed its motion to dismiss (docket no. 5, as supplemented by no. 13). On December 24, 2019, Plaintiff filed a motion to remand (docket no. 11).

**ANALYSIS**

I. **Plaintiff's Motion to Remand**

   a. **Legal Standard**

A defendant may remove to federal court any civil action brought in state court over which the district court would also have had original jurisdiction. 28 U.S.C. § 1441(a). One such category of cases over which district courts have original jurisdiction is federal question cases, or cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In determining whether a claim "arises under" federal law, courts examine the well-pleaded

---

[1] Plaintiff claims that High Standard and Double Down are each "an agent, servant, statutory employee, and/or co-employee for" Defendant Danco. *Id.* at 14.

allegations of the complaint and ignore potential defenses. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Such a suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or [the] Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution…." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Thus, if a plaintiff pleads solely state-law claims, "a federal court generally does not have jurisdiction over that complaint, even if the defendant asserts preemption as an affirmative defense." *McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th Cir. 2012) (quoting *Gutierrez v. Flores*, 543 F.3d 248, 251–52 (5th Cir. 2008)).

The "complete preemption" doctrine, however, presents an exception to the well-pleaded complaint rule. *Id.* Under complete preemption, "[w]hen the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that action, even if pleaded in terms of state law, is in reality based on federal law. The claim is then removable under 28 U.S.C. § 1441(b)…." *Anderson*, 539 U.S. at 8. Federal question jurisdiction based on such preemption exists "[w]hen Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Gutierrez*, 543 F.3d at 252 (quoting *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000)).

Because removal implicates federalism concerns, any ambiguities are construed against removal and in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)). Indeed, "[s]tatutes that authorize removal, including those that do so through complete preemption, are

3

meant to be strictly construed." *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013). The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper. *Manguno*, 276 F.3d at 723.

    b. **Analysis**

Plaintiff argues this Court lacks jurisdiction over the matter because neither diversity nor federal question jurisdiction is present. Docket no. 11. Specifically, Plaintiff argues that "[t]he [Federal Aviation Administration Authorization Act, or 'FAAAA'] has not specifically exempted state causes of action for simple negligence and gross negligence" through its preemption provision. *Id.* at 7. Alternatively, Plaintiff argues the public-safety exception to preemption applies. *Id.* at 10–11. Defendant, in turn, argues that the FAAAA completely preempts such claims against a freight broker. Docket no. 12.

There are two relevant preemption provisions, though the parties and related case law focus largely on the second. The Interstate Commerce Commission Termination Act ("ICCTA") reads:

> [N]o State or political subdivision thereof and no intrastate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or *broker*.

49 U.S.C. § 14501(b)(1) (emphasis added). Similarly, the FAAAA preemption provision reads, in relevant part:

> [A] State…may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier… or any private motor carrier, *broker*, or freight forwarder with respect to the transportation[2] of property.

---

[2] "Transportation" is defined in Title 49 as services related to the movement of persons or property, including "arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23).

§ 14501(c)(1) (emphasis added).³ Congress enacted the FAAAA to "preempt state trucking regulation" and to avoid "a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services that motor carriers will provide." *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 368, 372 (2008) (citations omitted). The preemption language of the FAAAA directly mirrored the earlier Airline Deregulation Act ("ADA") and in interpreting identical provisions of those two statutes, the Supreme Court held that the FAAAA's preemption must also be read broadly. *Id.* at 370 ("[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates…the intent to incorporate its judicial interpretations as well."). In applying the ADA preemption standard to the FAAAA, the *Rowe* Court adopted the holding of *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), which held that "preemption may occur even if a state law's effect on rates, routes, or services 'is only indirect'" and that "pre-emption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 370–71 (citing *Morales*, 504 U.S. at 384–90)); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (interpreting the FAAAA's "related to" provision as embracing state laws "having a connection with or reference to" carrier rates, routes, or services, whether directly or indirectly).

There are limits, however, to the FAAAA's preemption. *Pelkey*, 569 U.S. at 260. The Supreme Court noted that "§ 14501(c)(1) does not preempt state laws affecting carrier prices,

---

³ Just as courts interpreting the FAAAA use ADA caselaw, so too do courts interpreting § 14501(b)(1) use previous cases considering § 14501(c)(1). *See, e.g. Dnow, L.P. v. Paladin Freight Solutions, Inc.*, No. 17-CV-3369, 2019 WL 398235 (S.D. Tex. Jan. 12, 2018).

5

routes, and services in only a tenuous, remote, or peripheral manner." *Id.* at 261. The Court also highlighted one key difference between the ADA and the FAAAA: the phrase "with respect to the transportation of property" appears solely in the FAAAA and it "massively limits the scope of preemption" ordered by the FAAAA. *Id.*[4] Further, the FAAAA contains an explicit exception, which provides that FAAAA preemption "shall not restrict the safety regulatory authority of a State with respect to motor vehicles…." 49 U.S.C. § 14501(c)(2).

With neither persuasive nor binding authority from any circuit court, "[f]ederal district courts are sharply divided on how to apply these guiding principles to personal injury claims alleging negligence by brokers in selecting motor carriers for the transportation of property," the very issue presented in this case. *Loyd v. Salazar*, No. CIV-17-977, 2019 WL 4577108, at *4 (W.D. Okla. Sept. 20, 2019); *see also Creagan v. Wal-Mart Trans., LLC*, 354 F. Supp. 3d 808, 812 (N.D. Ohio 2018) (outlining split among district courts and noting the lack of circuit court guidance). Two diverging lines of cases have developed, though both share an understanding that common law negligence claims embody state laws that *may* be preempted. *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281–82 ("[S]tate common-law rules fall comfortably within the language of the ADA preemption provision" because they "appl[y] to state law[s], regulation[s], or other provision[s] having the force and effect of law…."); *see also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n.8 (1995).

---

[4] In so finding, the Court held that preemption did not apply in *Pelkey* because the claim there did not relate to the transportation of property but rather related solely to "conduct occurring after the car ceased moving and was stored." *Pelkey*, 569 U.S. at 262. Specifically, the claim there related to *permanent* storage, which fell outside of the statute's preemption, whereas storage-in-transit would have fallen within the preemption provision's ambit. *Id.*

One set of courts has "simply refused to hold that personal injury claims are preempted, largely relying on ADA cases to justify such a rule." *Loyd*, 2019 WL 4577108, at *4 (citing *Scott v. Milosevic*, 372 F. Supp. 3d 758, 769 (N.D. Iowa 2019)). The *Milosevic* court acknowledged the lack of appellate authority on FAAAA preemption and instead looked at cases refusing to find the ADA preempted state tort law claims. *Milosevic*, 372 F. Supp. 3d at 769–70 (citing *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1266 (9th Cir. 1998); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338 (5th Cir. 1995) ("[N]either the ADA nor its legislative history indicates that Congress intended to displace the application of state tort law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption.")).

But those courts finding no preemption under the ADA largely reasoned as such due to an ADA provision requiring air carriers to maintain insurance coverage for personal injury claims. *See, e.g. Hodges*, 44 F.3d at 337–38 ("A complete preemption of state law in this area would have rendered any requirement of insurance coverage nugatory.").[5] The FAAAA contains a similar insurance-coverage provision for motor carriers and freight forwarders, but *not* for brokers. *See* 49 U.S.C. § 13906(a)(1), (b)(1)-(2), (c)(3); *Krauss v. IRIS USA, Inc.*, No. 17-778, 2018 WL 2063839, at *6 (E.D. Pa. May 3, 2018) ("[T]his airline-specific insurance provision is one of the few ways in which the statutory text could be read to distinguish FAAAA preemption for freight brokers from ADA preemption for airlines."). Given that distinction, the Court finds unpersuasive cases

---

[5] *See also Watson v. Air Methods Corp.*, 870 F.3d 812, 819 (8th Cir. 2017) ("It is unlikely…that all personal injury claims against air carriers…are expressly preempted by the ADA, given that federal law requires carriers to maintain insurance for bodily injury, death, or property damages….") (citing 49 U.S.C. § 41112(a)); *Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 95 (1st Cir. 2013) ("[T]he fact that the ADA insurance provision mandates that airlines carry sufficient insurance to pay [for bodily injury or death] suggests that Congress never intended to preempt personal injury claims."); *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998) ("[T]he continued existence of statutorily mandated liability insurance coverage is strong evidence that Congress did not intend to preempt state tort claims.").

7

rejecting FAAAA preemption based solely on the fact that prior courts rejected ADA preemption. *Loyd*, 2019 WL 4577108, at *4.

Another set of courts found no preemption on the rationale that a negligent hiring action is too "tenuous, remote, or peripheral" from the "services" of a freight broker. *See, e.g. Mann v. C.H. Robinson Worldwide, Inc.*, No. 7:16-cv-104, 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017). Such reasoning is unavailing, however, given the definition of "brokerage services" as defined in Title 49. *See* 49 C.F.R. § 371.2(c) ("Brokerage or brokerage service is the arranging of transportation or the physical movement of a motor vehicle or of property."). And "freight broker" itself is defined as "a person…that as a principal or agent sells, offers to sell…provid[es], or arrang[es] for, transportation by motor carrier for compensation." *Id.* § 13102(2).

Plaintiff's claims here do indeed relate to those services, as Plaintiff alleges Defendant Danco—acting as a freight broker—was negligent in its vetting of freight carriers High Standard and Double Down Trucking (who, in turn, were negligent in vetting the driver involved in the accident). In essence, Plaintiff claims that Defendant Danco was negligent in arranging for the transportation of property between motor carriers. These allegations "go to the core of what it means to be a careful broker." *Krauss*, 2018 WL 2063839, at *5 (holding FAAAA completely preempted claim against freight broker under negligent hiring theory because careless selection of a carrier is a core service of a freight broker); *see also Georgia Nut Co. v. C.H. Robinson Co.*, No. 17 C 3018, 2017 WL 4864857 (N.D. Ill. Oct. 26, 2017) ("While the services of a freight broker do not include the actual transportation of property, they are focused on arranging how others will

8

transport the property; these services, therefore, fall within the scope of the FAAAA preemption.").[6]

A final set of courts has found that state law negligent hiring claims fall within the FAAAA's carve-out for safety regulations related to motor vehicles. *See, e.g. Morales v. Redco Trans. Ltd.*, No. 14-cv-129, 2015 WL 9274068 (S.D. Tex. Dec. 21, 2015). That section provides that the preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles…." 49 U.S.C. § 14501(c)(2)(A). The exception is intended to ensure FAAAA preemption does "not restrict the preexisting and traditional state police power over safety." *City of Columbus v. Ours Garage & Wrecker Serv. Inc.*, 536 U.S. 424, 439 (2002). But "[c]ase law interpreting § 14501(c)(2)(A) refers solely to the ability of the several states to define safety standards and insurance requirements…The exception is not read to permit a private right of action." *Huntington Operating Corp. v. Sybonney Express Inc.*, No. H-08-781, 2010 WL

---

[6] The Fifth Circuit's interpretation of "services" in *Hodges* is instructive. There, in interpreting the ADA, the *Hodges* court held that "'[s]ervices' generally represent a bargained-for or anticipated provision of labor from one party to another." *Hodges* 44 F.3d at 336. In so holding, the court drew a distinction between claims premised on the "operation and maintenance of the aircraft" (which fell outside of the ADA's definition of services) and contractual features of air transportation (which fell within the definition). *Id.* A "freight broker," as defined in the Code of Federal Regulations is:

> [A] person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 1302(2). Defendant's arranging of transportation with the motor carriers falls within the bargained-for or anticipated provision of labor such a freight broker would be anticipated to provide. *See Finley v. Dyer*, No. 18-CV-78, 2018 WL 5284616, at *5 (N.D. Miss. Oct. 24, 2018) ("[Plaintiff] alleges claims derived from [defendant-broker's] *selection* of a freight carrier, an action which indisputably is a 'bargained-for or anticipated provision of labor' from a freight broker."). As such, Plaintiff's reliance on *Hodges* to find *no* preemption is misplaced.

9

1930087, at *3 (S.D. Tex. May 11, 2010) (citing *City of Columbus*, 536 U.S. 424; *Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex.*, 180 F.3d 686 (5th Cir. 1999)).

Indeed, the FAAAA preemption provision applies broadly to any "law, regulation, or other provision having the force and effect of law," whereas the carve-out provision applies more narrowly to the "safety regulatory authority" of a state with respect to motor vehicles. *Compare* 49 U.S.C. § 14501(c)(1) *with* § 14501(c)(2)(A); *see also Creagan*, 354 F. Supp. 3d at 814 (rejecting argument that § 14501(c)(2)(A) applied to negligent hiring claim against freight broker under similar facts). In this case, Plaintiff does not allege that Defendant Danco violated any state regulation related to a motor vehicle, whereas he does with the driver. *See* docket no. 10 at 8 (alleging driver violated Texas Transportation Code §§ 545.062 (following distance) and 545.352 (excess speed)).[7] Indeed, Defendant did not own or operate any motor vehicle subject to the state's regulatory authority, and "Plaintiff points to no convincing authority supporting the proposition that a state common law claim for negligent hiring constitutes a safety regulation of a motor vehicle." No. 16 C 1883, *Volkova v. C.H. Robinson Co.*, 2018 WL 741441, at *4 (N.D. Ill. Feb. 7, 2018); *see also Loyd*, 2019 WL 4577108, at *7 (finding an application of the public-safety exception to a negligent brokering claim would be an "unwarranted extension of the exception"). Accordingly, the Court finds that § 4501(c)(2)(A) does not apply to save Plaintiff's claims from preemption.

The Court finds most persuasive the line of cases that have held negligence claims against freight brokers are preempted under the FAAAA because "[e]nforcing state negligence laws that

---

[7] Plaintiff's Third Amended Complaint itself states that he asserts "only Texas common law causes of action" against Defendant. Docket no. 10 at 14.

would have a direct and substantial impact on the way in which freight brokers hire and oversee transportation companies would hinder" the objective of the FAAAA in deregulating the shipping and transportation industry. *Georgia Nut*, 2017 WL 4864857, at *3 (citing *Rowe*, 552 U.S. at 371)); *see also Volkova*, 2018 WL 741441, at *4; *Creagan*, 354 F. Supp. 3d at 813 ("[B]ecause the negligent hiring claim seeks to enforce a duty of care related to how [the broker] arranged for a motor carrier to transport the shipment (the service), the claim falls squarely within the preemption of the FAAAA."). Those cases emphasize that a broker hiring a motor carrier (and any related investigations of that motor carrier) are indeed "related to" the services that a broker is anticipated or contracted to provide; they also emphasize the policies underlying Congress's enactment of the preemption provision to further expand the deregulation of the transportation industry and to avoid a patchwork of state and local regulations and standards. *See Krauss*, 2018 WL 2063839, at *3; *Georgia Nut*, 2017 WL 4864857, at *3; *Creagan*, 354 F. Supp. 3d at 813; *Volkova*, 2018 WL 741441, at *3–4.

At bottom, Plaintiff claims that Defendant Danco negligently selected or hired High Standard and Double Down Trucking who, in turn, negligently hired and entrusted the driver involved in the accident. Docket no. 10. Plaintiff's petition itself admits that Defendant's alleged duty toward Plaintiff arose from Defendant's services as a truck broker. Docket no. 7 at 24 ("Plaintiff asserts that due to the business relationship with [High Standard and Double Down], DANCO TRANSPORT, INC. *as a truck broker*…had a duty to Plaintiff to ensure that [the driver] was properly trained….") (emphasis added). Plaintiff's claims against Defendant Danco, therefore, seek to enforce a duty of care related to how Defendant arranged for the transportation of property between High Standard and Double Down, which—Plaintiff admits—are the very "services"

11

Defendant provides as a federally-licensed freight broker. Such a claim "falls squarely within the preemption of the FAAAA." *Creagan*, 354 F. Supp. 3d at 813. Indeed, the claim directly implicates how Defendant "performs its central function of hiring motor carriers" and will therefore "have a significant economic impact" on Defendant's services and is not tenuous, remote, or peripheral. *Krauss*, 2018 WL 2063839, at *5 (quoting *Volkova*, 2018 WL 741441, at *3). In sum, the allegations "go to the core of what it means to be a careful freight broker" and, as such, they are preempted. *Id.*

Such a holding comports with the impetus behind the FAAAA's preemption provision because, in essence, Plaintiff is seeking "to reshape the level of service a broker must provide in selecting a motor carrier to transport property." *Miller v. C.H. Robinson Worldwide*, No. 17-cv-408, 2018 WL 5981840, at *4 (D. Nevada Nov. 14, 2018), *appeal docketed*, No. 19-15981 (9th Cir. May 7, 2019). To avoid negligence liability, a broker like Defendant would need to inspect each motor carrier's background and the ways in which the motor carrier investigates, hires, and trains its own drivers, and "such additional inspection would result in state law being used to, at the least indirectly, regulate the provision of broker services by creating a standard of best practices, and ultimately contravening Congress's deregulatory objectives in enacting the FAAAA." *Id.* (citing *Rowe*, 552 U.S. at 370).

And finally, contrary to Plaintiff's argument that a finding of preemption will leave Plaintiff without a remedy, Plaintiff may (and has) sought recourse against the two carriers (High Standard and Double Down Trucking), High Standard's individual owner (Cory Wood), Double Down's individual owners (Lora and Dale Wood), and the driver (Micah Underwood). *See Volkova*, 2018 WL 741441, at *4. And although "a plaintiff's 'lack of remedy…does not create a

defense to federal preemption," *Krauss*, 2018 WL 2063839, at *7 (citing *Weir v. Nw. Nat. Life Ins. Co.*, 796 F. Supp. 846, 849 (E.D. Pa. 1992)), the FAAAA *does* require *motor carriers* to carry liability insurance for injuries that may result from negligence. *Creagan*, 354 F. Supp. 3d at 814 (citing 49 U.S.C. § 13906(a)(1)). The requirement that the motor carriers maintain liability insurance—and the lack of such a requirement for brokers—evidences an intent that such motor carriers remain liable for negligence despite the FAAAA's preemption provision. *See supra*, note 5 (collecting cases in which courts interpreting the ADA found no preemption for negligence claims due to statutorily-mandated liability insurance). As such, the Court finds unpersuasive Plaintiff's argument that if the Court denies its motion to remand, "every motor carrier, CDL driver and truck broker would improperly remove to federal court every lawsuit against them for negligent conduct…." Docket no. 11 at 5.

Accordingly, the Court holds that Plaintiff's negligence and gross negligence claims against the freight broker Defendant Danco are completely preempted by the FAAAA. And "[w]hen the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that action, even if pleaded in terms of state law, is in reality based on federal law." *Anderson*, 539 U.S. at 8. Defendant Danco—as the freight broker who allegedly hired the motor carriers who then hired the driver who was allegedly negligent—properly removed this case, and Plaintiff's motion to remand (docket no. 11) is DENIED.

II. **Defendant Danco Transport's Motion to Dismiss**

   a. **Legal Standard**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

13

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

   b. **Application**

The discussion here overlaps entirely with the previous analysis of FAAAA preemption. As held above, the FAAAA completely preempts Plaintiff's negligence claims against Defendant Danco, at least where that negligence "relates to" the services the broker provides, as is the case here. Finding such FAAAA preemption afforded this Court jurisdiction to consider the matter, and that same preemption compels the Court to grant Defendant Danco's motion to dismiss. Even taking all facts in Plaintiff's complaint as true—which we must at this stage—Plaintiff does not state a claim for which relief is plausible. *See Loyd*, 2019 WL 4577108, at *8 (granting motion to dismiss due to FAAAA preemption of negligence claim against broker). Accordingly, Defendant Danco's motion to dismiss (docket no. 5) is GRANTED.

   c. **Remaining State-Law Claims**

When Defendant Danco removed to this Court, the Court obtained supplemental jurisdiction over the state-law claims made against the other defendants (the motor carriers and the

driver) because those claims formed part of the same case or controversy as the claims against Defendant Danco. 28 U.S.C. § 1367(a). But now having disposed of the claim over which original jurisdiction exists, i.e. the claim against Defendant Danco, the Court hereby exercises its discretion to decline to exercise supplemental jurisdiction over the remaining claims. *Id.* § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if the district court has dismissed all claims over which it has original jurisdiction."); *see also Guidry v. Bank of LaPlace*, 654 F.2d 278, 285 (5th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Accordingly, the state-law claims by Plaintiff against the remaining defendants (High Standard, LLC; Double Down Trucking, LLC; Cory Wood; Micah David Underwood; Lora Wood; and Dale Wood) are REMANDED.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (docket no. 11) is DENIED. Defendant's motion to dismiss (docket no. 5) is GRANTED. The claims against the remaining defendants are REMANDED.

It is so ORDERED.

SIGNED this 27th day of January, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE